# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ERIN D. HOUSE,

        *Plaintiff*,

   v.

U.S. DEPARTMENT OF JUSTICE,[1]

        *Defendant*.

Civil Action No. 14-20 (RDM)

## MEMORANDUM OPINION AND ORDER

Erin D. House, who is proceeding *pro se*, was charged in the Western District of Pennsylvania with conspiracy to distribute and to possess with intent to distribute cocaine. On May 24, 2013, while awaiting trial, House filed a request with the Criminal Division of the United States Department of Justice ("Department") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, seeking documents regarding electronic surveillance used to obtain evidence for his criminal prosecution. After the Criminal Division declined to produce any responsive records, House brought this action under FOIA and the Privacy Act.

The Department's motion for summary judgment is now pending before the Court. *See* Dkt. 7. For the reasons explained below, the Court will grant the Department's motion in part and deny it in part without prejudice.

---

[1] The U.S. Department of Justice is hereby substituted for Kenneth Courter. *See Martinez v. BOP*, 444 F.3d 620, 624 (D.C. Cir. 2006) (holding that FOIA and the Privacy Act "concern the obligations of agencies as distinct from individual employees in those agencies"); *see also* Dkt. 18 at 1 n.1 (requesting substitution).

# I. BACKGROUND

Erin House was charged in the Western District of Pennsylvania with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine. *See* Dkt. 7 at 3. On May 24, 2013, he submitted a FOIA and Privacy Act request to the Criminal Division of the Department of Justice. House explained that on July 13, 2009, July 15, 2009, and July 16, 2009, the Federal Bureau of Investigation ("FBI") had intercepted his communications pursuant to a court-authorized Title III wiretap, and he sought "a copy of the Title III interception of electronic communications approval letter(s) and all other documents that are a part of electronic surveillance for the following Direct Connect Identity ("UFMI") number 124*493*[xxxx] and Cellular Telephone Number 323-208-[xxxx] bearing the International Mobile Subscriber Identity ("IMSI") number 31601015469[xxxx]."[2] Dkt. 7-2.

On July 3, 2013, the Criminal Division's Office of Enforcement Operations ("OEO") informed House that because "[t]he records [he] [sought] require[ed] a search in another Office of the Criminal Division," OEO needed to extend the time to respond by more than ten days, pursuant to 5 U.S.C. § 552(a)(6)(B)(i)–(iii). Dkt. 7-3. OEO invited House to narrow the scope of his request, to agree to an alternative time frame for processing any responsive records, or to await completion of the records search to discuss those options. *Id.* On July 11, 2013, House replied, inquiring whether the July 3 letter indicated that OEO did "not have any records . . . concerning [the specified] Title III interceptions" and, "[i]f not, what other Office of the

---

[2] The phone referenced in House's FOIA/Privacy Act request apparently belonged to one of House's co-defendants. *See United States v. House*, No. 09-273-03, 2015 WL 4111457, at *9 (W.D. Pa. July 8, 2015), *reconsideration denied*, No. 09-273-03, 2015 WL 6134031 (W.D. Pa. Oct. 16, 2015).

Criminal Division would these records possibly be at considering the Department of Justice procedures require[] all Title III wire interceptions [to] be handled by the Electronic Surveillance Unit (ESU) wh[ich] operates within . . . [OEO]?"  Dkt. 7-4.  The Criminal Division did not separately respond to that letter.

The Criminal Division denied House's FOIA/Privacy Act request by letter dated July 15, 2013.  Dkt. 7-5.  It informed House that it did not conduct a search for records because "to the extent responsive record[s] do exist, they are exempt from disclosure pursuant to" FOIA Exemption 3, which permits agencies to withhold documents "specifically exempted from release by statute."  *Id.* (citing 5 U.S.C. § 552(b)(3)).  House appealed the Division's denial of his request on July 21, 2013.  Dkt. 7-6.  The Department's Office of Information Policy affirmed the denial on January 7, 2014.  Dkt. 7-7 at 2.  It explained that "any responsive records would be protected from disclosure under" FOIA Exemption 3, and also that "the records responsive to [the] request are exempt from the access provision of the Privacy Act," citing 5 U.S.C. § 552a(j)(2).  *Id.*  House then filed this lawsuit under FOIA and the Privacy Act.  Dkt. 1.

House challenges the adequacy of the Department's search and all of its withholdings, and he seeks an order directing the Department to produce the documents identified in his FOIA/Privacy Act request.  *Id.* at 5.  He also requests that the Court "provide for expeditious proceedings in this action," as the documents relate to his criminal trial.  *Id.*  After House filed suit, the Criminal Division searched two databases: an OEO "database used to track federal prosecutors' requests for permission to apply for court-authorization to surreptitiously intercept conversations of person[s] allegedly involved in criminal activity under Title III," and "archived emails of Criminal Division employees that are maintained by its IT department."  Dkt. 7-1 at 4

(Sprung Decl. I ¶ 13).  The Department continues to maintain, however, that House is not entitled to any responsive records.  *See* Dkt. 7 at 12–13.

The matter is before the Court on the Department's motion for summary judgment.  *See* Dkt. 7.  The Department argues that it conducted an adequate search and that it properly withheld all responsive records pursuant to FOIA Exemptions 3, 5, 6, and 7(C) and Privacy Act Exemption (j)(2).  *Id.* at 13.  It supports its motion with three declarations by Peter C. Sprung, a trial attorney assigned to the Criminal Division's FOIA and Privacy Act Unit, *see* Dkt. 7-1 at 1 (Sprung Decl. I ¶¶ 1–2); *see also* Dkt. 18-1 (Sprung Decl. II); Dkt. 21-1 (Sprung Decl. III), as well as a 57-page *Vaughn* index describing the withheld records and the reasons that they were withheld, *see* Dkt. 7-8 (Sprung Decl. I, Ex. G); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

## II.  LEGAL FRAMEWORK

The Freedom of Information Act is premised on the notion that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The Act embodies a "general philosophy of full agency disclosure."  *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976)).  It thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions.  "These exemptions are 'explicitly made exclusive' and must be 'narrowly construed.'"  *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (quoting *EPA v. Mink*, 410 U.S. 73, 79 (1973), and *FBI v. Abramson*, 456 U.S. 615, 630 (1982)).  As explained further below, the present dispute turns on the meaning and application of Exemptions 3 and 5.  Exemption 3 protects records that are "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  And Exemption 5 protects "inter-agency or intra-agency memorandums or

letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* § 552(b)(5). It exempts "those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used, and by imposing responsibilities on federal agencies to maintain their records accurately." *Mobley v. CIA*, 806 F.3d 568, 585 (D.C. Cir. 2015) (quoting *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984)). Under the Privacy Act, any agency that maintains a "system of records" must provide information about a person to that person upon request. 5 U.S.C. § 552a(d)(1). But the head of an agency may exempt "systems of records" from this disclosure requirement if the principal function of the "agency or component thereof . . . pertain[s] to the enforcement of criminal laws," and the records "consist of . . . information compiled for the purpose of a criminal investigation." *Id.* § 552a(j). This broad exemption authority is premised on the notion that "[t]he Privacy Act—unlike [FOIA]—does not have disclosure as its primary goal." *See Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56. *See, e.g.*, *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011). To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In a FOIA action, the agency may meet its burden by submitting "relatively detailed and non-

conclusory" affidavits or declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks and citation omitted), and an index of the information withheld, which is commonly known as a "*Vaughn* index," *see Vaughn*, 484 F.2d at 827–28; *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). An agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements." *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). The Court reviews the agency's decision *de novo*, and the agency bears the burden of sustaining its action. 5 U.S.C. § 552(a)(4)(B).

## III. DISCUSSION

### A. FOIA

#### 1. *Adequacy of the Search*

House first argues that the Department violated FOIA by failing to conduct a search for responsive records until after he filed suit. *See* Dkt. 10 at 9–10. Although House is correct about the timing of the search, *see* Dkt. 7-1 at 2–6 (Sprung Decl. I ¶¶ 6–19), "this does not mean [that] he is entitled to all requested records," *Ellis v. U.S. Dep't of Justice*, 110 F. Supp. 3d 99, 105 (D.D.C. 2015). Nothing in FOIA or the caselaw supports the novel contention that an agency waives otherwise available exemptions simply because it fails to respond to a FOIA request prior to the time the FOIA requester brings suit or that "[t]he delay in DOJ's search . . . affect[s] its adequacy." *Id.* Nor does FOIA permit a requester to recover damages based on an agency's "dilatory conduct," *id.*, or to recover attorneys' fees where the plaintiff has not "substantially prevailed," *Sai v. TSA*, No. 14-403, 2016 WL 74397, at *3 (D.D.C. Feb. 6, 2016). And although

an agency's delay in conducting a search might justify "a finding that [the] [p]laintiff constructively exhausted his administrative remedies," *Ellis,* 110 F. Supp. 3d at 105 (citing *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 184 (D.C. Cir. 2013)), the Department has not raised an exhaustion defense in this case. Thus, "while [House] is correct that the [Department of Justice] violated FOIA by failing to conduct a search until after the suit was filed, that result has no legal consequence in this case." *Gordon v. Courter*, 118 F. Supp. 3d 276, 284 (D.D.C. 2015).

House next argues that the Department's FOIA search was "[i]nadequate, [i]nsufficient, [u]nreasonable, and [c]onducted in [b]ad [f]aith." Dkt. 10 at 11. "An agency has an obligation under FOIA to conduct an adequate search for responsive records." *Ewell v. U.S. Dep't of Justice*, No. 14-495, 2016 WL 316777, at *3 (D.D.C. Jan. 26, 2016). The adequacy of an agency's FOIA search "is judged by a standard of reasonableness," *Weisberg v. Dep't of Justice*, 745 F. 2d 1476, 1485 (D.C. Cir. 1982) (per curiam), and "[a]n agency fulfills its obligations . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents,'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "[W]hether a search is adequate is determined by methods, not results." *Nance v. FBI*, 845 F. Supp. 2d 197, 201 (D.D.C. 2012). Although the agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested," it need not "search every record system." *Oglesby*, 920 F.2d at 68. The agency can show that it conducted

an adequate search by relying on "[a] reasonably detailed affidavit [or declaration], setting forth the search terms and the type of search performed, and averring that all files likely to obtain responsive records (if such records exist) were searched." *Valencia-Lucena*, 180 F.3d at 326.

The Department has introduced a declaration explaining its search methodology. The declaration, provided by trial attorney Peter C. Sprung, explains that "[t]here were two sources of records in [the Criminal Division] where documents responsive to Mr. House's FOIA request were likely to be located: (1) an OEO database used to track federal prosecutors' requests for permission to apply" for Title III wiretaps, and "(2) archived emails of Criminal Division employees that are maintained by its IT department." Dkt. 7-1 at 4 (Sprung Decl. I ¶ 13). Sprung states that the Department searched both sources. *Id.* He explains that the Department searched the Title III database for "references to the telephone number that Mr. House identified in his May 24, 2013 FOIA request" and for the name "Erin House." *Id.* (Sprung Decl. I ¶ 14). He also attests that the Department identified the Criminal Division attorney who reviewed the request for permission to apply for a wiretap, as well as the prosecutor who made the request, and searched the Criminal Division attorney's email account for emails exchanged between the two from April 1, 2009 through September 2, 2009—"the entire time period of communications between the [Criminal Division] attorneys and the prosecutor concerning the Title III authorizations that are at issue in this case." *Id.* at 6 (Sprung Decl. I ¶ 21). Sprung explains: "[The Criminal Division] searched the two records systems that would contain information responsive to Mr. House's request. Its search was conducted in good faith, and was reasonable and complete." *Id.* at 7 (Sprung Decl. I ¶ 22).

(a) <u>Vaughn Index</u>

As an initial matter, the Court notes that the first Sprung declaration raises a question about the scope of the *Vaughn* index that the Department has submitted in support of its motion. In particular, Sprung avers that in conducting its search, the Department determined that an OEO attorney and the prosecutor assigned to the matter were in communication about the surveillance of the specified phone between April 1, 2009 and September 2, 2009. *Id.* at 6 (Sprung Decl. I ¶ 21). The Department's *Vaughn* index, however, does not identify any documents predating June 29, 2009. *See generally* Dkt. 7-8. And although the *Vaughn* index does include two undated entries, *see* Dkt. 7-8 at 3–4, neither of those entries is for an email or other "communication" between the OEO attorney and the prosecutor. As early as May 26, 2009, moreover, a magistrate judge authorized the installation and use of a "pen/trap" on the phone identified in House's FOIA/Privacy Act request. *See United States v. House*, No. 09-273-03, 2015 WL 4111457, at *9 (W.D. Pa. July 8, 2015), *reconsideration denied*, 2015 WL 6134031 (W.D. Pa. Oct. 16, 2015); *see also* 18 U.S.C. § 3127(3)–(4) (defining "pen register" and "trap and trace device," which capture information about calls dialed and received, respectively, but not the contents of a communication).

As a result, the Court cannot foreclose the possibility that the Department possesses potentially responsive records that predate June 29, 2009, and the *Vaughn* index offers no explanation for why any such records were withheld. It may be that the Department excluded such documents based on a construction of House's request as encompassing only records relating to a Title III authorization, as opposed to authorizations for pen registers and trap and trace devices. The Court is skeptical, however, that House's request is amenable to such a limited construction, since it seeks "all . . . documents that are a part of the electronic

surveillance" of the specified phone, and not just "Title III . . . approval letter(s)."  *See* Dkt. 7-2 at 2.  In any event, the Court cannot determine on the present record whether additional potentially responsive records exist and, if so, the Department's rationale for omitting them from its *Vaughn* index or for withholding them.  Thus, with respect to the time period from April 1, 2009 to June 29, 2009, the Court concludes that the Department has not yet carried its burden of demonstrating that it is entitled to judgment as a matter of law.  In all other respects, however, as explained below, the Court rejects House's contention that the Department's search was inadequate.

>        (b)  Push-to-Talk

House contends that the Justice Department erred by not searching for "the UFMI number 124*493*[xxxx] as requested."  Dkt. 10 at 14.  His FOIA request identified three different numbers associated with the surveilled phone—a cellular number, an International Mobile Subscriber Identity number, and the Direct Connect Identity ("UFMI") number.  *See* Dkt. 7-2 at 2.  A UFMI number is associated with the push-to-talk feature of a phone, which is distinct from its regular cellular-communication functionality, *see* Dkt. 21-1 at 4 (Sprung Decl. III ¶ 11), and House argues that the Department should have searched for the UFMI number, not just the cellular number.[3]  *See* Dkt. 10 at 44–45.  Because the original Sprung declaration stated only that the Department "searched for *the* telephone number," Dkt. 7-1 at 5 (Sprung Decl. I ¶ 15) (emphasis added), and did not address whether a search for the UFMI number was likely to yield

---

[3]  "A Nextel cellular telephone device can be used to engage in both traditional, open-line telephone communications and push-to-talk ('PPT') communications.  A PTT communication is sometimes referred to 'direct connect.'  PTT is a communication technique unique to Nextel . . . .  A PTT conversation . . . is akin to a walkie-talkie communication."  *House*, 2015 WL 4111457, at *4–5.

responsive records (or whether such a search would simply be duplicative), the Court ordered the Department to file a supplemental brief clarifying this issue. *See* June 15, 2016 Min. Order.

In response, the Department filed a supplemental declaration explaining that, because the U.S. Attorney's Office ("USAO") that submitted the request for Title III authorization "did not provide any information concerning an associated UFMI number[,] . . . none of the documents in the [Title III] tracking system relating to the telephone at issue in this case identified the UFMI number" cited in House's FOIA/Privacy Act request. Dkt. 21-1 at 4 (Sprung Decl. III ¶ 11). The declaration further stated that, following the Court's order for supplemental briefing, the Department searched the Title III database "for references to UFMI number 124*493*[xxxx]," and that search "produced no hits." *Id.* Finally, the supplemental declaration explained that because the Department originally searched the Criminal Division email archive for relevant records by querying the name of the relevant assistant U.S. attorney, rather than by the cellular number, "[s]earching for emails referencing UFMI number 124*493*[xxxx] would not have captured any additional responsive records." *Id.* at 5 (Sprung Decl. III ¶ 12). The Court credits these explanations and, accordingly, concludes that no further search for records referencing UFMI number 124*493*xxxx is necessary.

(c)  Other Databases

Next, House contends that the Department should have searched other databases—"the FBI's Electronic Surveillance ("ESLUR") and Central Records System ("CRS") indices; and the DOJ's Justice/CRM-003 and Justice/CRM-019 indices." Dkt. 10 at 14. The Department was not, however, required to search FBI databases. House submitted his FOIA/Privacy Act request only to the "FOIA/PA Unit Criminal Division" of the Department and not to the FBI, which is a separate component of the Department. *See* Dkt. 7-2 at 2. The Department's FOIA regulations

mandate that requests be sent "directly to the FOIA office of the component that maintains the records being sought." 28 C.F.R. § 16.3(a)(1); *see also id.* at § 16.1(b) (defining "component" to mean "each separate bureau, office, division, commission, service, center, or administration"). "As a result, only the component to which the FOIA request is directed has an obligation to conduct a search." *Ewell*, 2016 WL 316777, at *4.[4]  "Because the [FBI's ESLUR and CRS] databases are not within the Criminal Division's control, [House] may not seek relief regarding searches—or the lack therefore—of those other databases in this action." *Gordon*, 118 F. Supp. at 285–86.

As for the CRM-003 and CRM-019 indices, the Department has submitted a supplemental declaration explaining why it did not search those indices. *See* Dkt. 18-1 (Sprung Decl. II).  According to that declaration, CRM-003 is a Criminal Division system of records containing "the names of those persons submitted by federal prosecutors to inquire whether such persons have been the subject of electronic surveillances.  The file consists of the names, the inquiries made to federal investigatory agencies, the replies received from such agencies, and the reply submitted to the prosecutor."  Dkt. 18-1 at 2 (Sprung Decl. II ¶ 7) (quoting 52 Fed. Reg. 47182, 47189 (Dec. 11, 1987)).  The declaration further explains that the Department "has not searched CRM-003 because it is not likely to contain any responsive documents."  Dkt. 18-1 at 2 (Sprung Decl. II ¶ 7).  In response, House has offered nothing more than speculation that the CRM-003 database contains potentially responsive documents, which is insufficient to rebut the

---

[4]  A FOIA requester who is "uncertain about the location of the records he s[eeks], [may send] his request, per FOIA regulations, to DOJ's catch-all 'FOIA/PA Mail Referral Unit,' which . . . then forward[s] the request to the appropriate components." *Gordon*, 118 F. Supp. 3d at 285–86 (citing 28 C.F.R. § 16.3(a)).  But here, House specifically directed his request to the Criminal Division, and, indeed, expressed skepticism that any offices other than the OEO would have the records he sought. *See* Dkt. 7-4 at 2–3.

presumption of good faith afforded to an agency's affidavit.  *See SafeCard*, 926 F.2d at 1200

(quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  More

importantly, House limited his FOIA/Privacy Act request to "a copy of the Title III interception

. . . approval letter(s) and all other documents that are a part of the electronic surveillance"—a

request that the Department could reasonably interpret as encompassing documents relating to

the obtaining of authorization for surveillance and the carrying out of surveillance, but not to

requests by prosecutors to law enforcement officials about whether such surveillance had

previously occurred.  *See* Dkt. 7-2 at 2.

As for CRM-019, the supplemental declaration states that it is "a Criminal Division

system of records containing 'requests received from federal investigative agencies and federal

prosecutors, and associated documents, seeking the authorization of the Attorney General

required by 18 U.S.C. § 2516 for an application to a federal court for an order authorizing the

interception of a wire or oral communication.'"  Dkt. 18-1 at 3 (Sprung Decl. II ¶ 8) (quoting 52

Fed. Reg. 47182, 47189 (Dec. 11, 1987)).  "[F]or purposes of House's request," however,

"CRM-019 does not contain any records that are not also within the [] Title III request tracking

database or [the archived email database]."  *Id.*  According to the Department, it "did not search

CRM-019 because" doing so "would have been redundant."  *Id.*  There is no reason to doubt this

explanation.  And although House cites several cases where the Department searched databases

not searched here, the Court has previously explained—in a case involving a FOIA/Privacy Act

request nearly identical to House's request—that "the FOIA requests submitted in each of those

cases differed in material respects."  *Ewell*, 2016 WL 316777, at *4 (distinguishing, *inter alia*,

*Lewis v. U.S. Dep't of Justice*, 867 F. Supp. 2d 1 (D.D.C. 2011); *Wolfson v. United States*, 672 F.

Supp. 2d 20 (D.D.C. 2009); and *Linn v. U.S. Dep't of Justice*, No. 92-cv-1406, 1995 WL 417810

(D.D.C. June 6, 1995)). *Cf.* Dkt. 10 at 17–18 (citing *Lewis*, *Wolfson*, and *Linn*). The fact that the Department did not search the CRM-003 and CRM-019 databases, therefore, does not render its search inadequate.

(d) Allegations of Bad Faith

Finally, House contends that the search was conducted in bad faith because it "was not conducted until . . . nearly 14 months after [the Department] initially admitted[] receiving [House's] FOIA/PA request." Dkt. 10 at 18–19. "While it is true that summary judgment for an agency may be inappropriate" where it has acted in bad faith, *Bartko v. Dep't of Justice*, 102 F. Supp. 3d 342, 351-52 (D.D.C. 2015), "[c]ourts routinely find that delays in responding to FOIA requests are not, in and of theselves, indicative of agency bad faith," *Ellis*, 110 F. Supp. 3d at 326 (quoting *Skurow v. Dep't of Homeland Sec.*, 892 F. Supp. 2d 319, 326 (D.D.C. 2012)). Here, House has failed to offer any basis for the Court to conclude that the Department's delay in responding to his request is indicative of an effort to hide or withhold responsive, non-exempt records or of a failure to engage in a diligent search for records.

House makes a variety of other arguments that the government has engaged in misconduct. None of these allegations, however, even purport to show bad faith *in the processing of his FOIA/Privacy Act request or in the course of this suit*. He contends, for example, that "the government in the [Western District of Pennslyvania (WDPA)]" has engaged in unauthorized interceptions of wireless communications and then used the evidence so-obtained to seek authorizations; that the U.S. Attorneys Office "in the WDPA is outright bypassing the OEO and fabricating AG approval letters;" that African-Americans are disproportitionately the subjects of unauthorized surveillance; and that the WDPA has not complied with wiretap reporting requirements. *See* Dkt. 10 at 34–44. But House's

FOIA/Privacy Act request did not seek documents relating to these matters. Rather, he sought approval letters and related documents pertaining to the surveillance of a specific phone. Dkt. 7-2 at 2. The question whether the surveillance was unauthorized or otherwise illegal is not properly raised in this FOIA/Privacy Act action. *Cf. House*, 2015 WL 4111457 (ruling on House's motion to suppress).

The Court, accordingly, concludes that House has failed to rebut the presumption of good faith applicable to the Department's explanation of its search efforts.

2. *Relevant FOIA Exemptions*

In addition to demonstrating that its search was adequate, the Department bears the burden of identifying "the specific statutory exemption relied upon" in withholding records and demonstrating "that the exemption applies to the documents in question." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 779 (D.C. Cir. 1978) (en banc). As explained below, the Department has carried this burden with respect to the records identified in the *Vaughn* index. To the extent that index is incomplete, however, the Department must do more to explain its bases for withholding any unidentified records.

(a) The Vaughn Index

House contends that the *Vaughn* index submitted by the Department in support of its motion for summary judgment provides inadequate information about the records in the index and the Department's justifications for treating those records as exempt. Before turning to the adequacy of the Department's explanations for withholding the documents identified in the *Vaughn* index, however, the Court must address one threshold issue. As explained above, the existing record leaves some uncertainty about whether the *Vaughn* index includes all of the records that were withheld. In particular, the Sprung declaration suggests that the OEO attorney

assigned to the matter and the prosecutor may have exchanged responsive emails during a period of time preceding the first entry in the *Vaughn* index. As a result, the Court cannot conclude on the present record that the Department has carried its burden of showing on a record-by-record basis that a specific statutory exemption is applicable. *See Jordan*, 591 F.2d at 779. The Court, accordingly, will deny summary judgment in part and will permit the Department to file a renewed motion, accompanied by either a declaration explaining the discrepancy between the Sprung declaration and the *Vaughn* index or a supplemental *Vaughn* index.

With respect to the listed records, however, the Court concludes that the Department has carried its burden. In its 58-page *Vaughn* index, the Department has "provide[d] a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). The index includes an entry for each identified record that summarizes its content, states the date associated with the record, lists the applicable exemptions, and provides an accompanying explanation of each asserted exemption's relevance to the record. *See* Dkt. 7-8. The *Vaughn* index also "tie[s] each individual document to one or more exemptions, and the [Sprung] declaration[s] link the substance of each exemption to the documents' common elements." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006). This presentation is sufficient "to organize the withheld documents in a way that facilitates litigant challenges and court review of the agency's withholdings." *Id.* at 148.

As explained below, the Court further concludes that all of the records identified in the *Vaughn* index were properly withheld under either Exemption 3 or 5.[5]

(b) <u>Exemption 3</u>

Exemption 3 shields from disclosure all records that are "specifically exempted from disclosure by statute," so long as the statute upon which the agency relies either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A).[6] "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents" and more on "the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland*, 607 F.2d at 350. The Department asserts that the non-disclosure provisions of Title III authorize it to withhold the application it submitted to the federal court in Pennsylvania for a wiretap, including all supporting materials. *See* Dkt. 7 at 19 (listing "Title III applications," "agent affidavits," "proposed court orders," and "Assistant Attorney General ('AAG') authorization memorandums"); *see also* Dkt. 7-1 at 5 (Sprung Decl. I ¶ 17) (explaining

---

[5] Although the Department relied solely on Exemption 3 in its administrative proceedings, "the D.C. Circuit has long implied that an agency may invoke a FOIA exemption for the first time in the district court—but not 'for the first time in the appellate court.'" *Ewell*, 2016 WL 316777, at * 5 n.2 (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 779 (D.C. Cir. 1978) (en banc)). House does not argue that the Department should be precluded from asserting Exemption 5 (or Privacy Act Exemption (j)(2), discussed below), so the Court concludes that the exemption is properly before it. Moreover, because the Court concludes that all of the records were properly withheld under Exemptions 3 and 5, it need not consider whether the Department is correct that Exemptions 6 or 7(C) are also applicable.

[6] The exemption also provides that any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009," Pub L. No. 111-83, § 564, 123 Stat. 2142, 2184 (2009), must "specifically cite to" the exemption. 5 U.S.C. § 552(b)(3)(B). Title III predates the OPEN FOIA Act.

that AAG authorization memorandum, Title III application, and proposed orders are filed under seal with the court).[7]

Title III establishes a comprehensive scheme to govern the procurement, use, and disclosure of federal law enforcement wiretaps. To obtain a wiretap, a law enforcement officer must submit an application "in writing upon oath or affirmation to a judge of competent jurisdiction." 18 U.S.C. § 2518(1). The statute requires that application include "the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application" and a "complete statement of the facts and circumstances" giving rise to the application. *See id.* § 2518(1)(a)–(b). If the judge concludes that the statutory requirements are met, he or she "may enter an ex parte order" authorizing the wiretap. *Id.* § 2518(3). Title III provides that any communications intercepted by the wiretap shall be recorded "if possible," and that the recordings "shall be made available to the judge issuing such order and sealed." *Id.* § 2518(8)(a). The recordings shall be used only by law enforcement officers "to the extent such use is appropriate to the proper performance of [their] official duties." *Id.* § 2517. Title III also provides that the "[a]pplications made and orders granted" for the authorization of wiretaps shall be sealed and "disclosed only upon a showing of good cause." *Id.* § 2518(8)(b). The recordings, the "court order" authorizing the wiretap, and the "accompanying application, under which the

---

[7] In the *Vaughn* index, the Justice Department appears to assert Exemption 3 more broadly to cover documents *not* submitted to the court in connection with its Title III application, as well as *draft* versions of wiretap application documents. *See, e.g.*, Dkt. 7-8 at 3, 6, 10 (listing "action memorandum" from attorney to AAG, draft applications for a Title III order, and "unsigned agents's affidavits" as covered by Exemption 3). Because the Court concludes that these items fall within Exemption 5, it has no need to decide whether Exemption 3 would permit the government to withhold them—a potentially more difficult question given that Title III does not expressly provide for the protection of material not submitted to a court as part of a wiretap application.

interception was authorized or approved," however, shall be produced to the parties before the recordings are introduced in a criminal proceeding.  *Id.* § 2518(9).

As the Court has previously explained, under D.C. Circuit precedent, "'intercepted communications' obtained pursuant to a Title III wiretap fall 'squarely within the scope' of Exemption 3."  *Ewell*, 2016 WL 316777, at *6 (quoting *Lam Lek Chong v. DEA*, 929 F.2d 729, 733 (D.C. Cir. 1991)).  And this Court has extended that holding to the application for a wiretap and all supporting materials submitted to the court to obtain a Title III wiretap.  *See id.*; *see also Sinito v. U.S. Dep't of Justice*, No. 87-814, 2000 WL 36691372, at *6 (D.D.C. July 12, 2000); *Butler v. U.S. Dep't of Justice*, No. 86-2255, 1994 WL 55621, at *8–9 (D.D.C. Feb. 3, 1994).

House responds that the records he seeks fall within the "public-domain" exception.  *See* Dkt. 10 at 27.  The "[t]he public-domain exception applies where a FOIA requester can identify documents 'made public through an official and documented disclosure' that exactly 'match the information previously disclosed.'"  *Ewell*, 2016 WL 316777, at *7 (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C.Cir.2007)).  "[A] plaintiff asserting a claim of prior disclosure . . . bear[s] the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld."  *Wolf*, 473 F.3d at 378.  House argues that the public-domain exception applies here because "Title III records and documents [] request[ed] from the [Department] . . . are routinely searched for and released administratively to requesters."  Dkt 10 at 27.  This does not meet his burden of showing that "the *specific* information sought by the plaintiff [is] already . . . in the public domain by official disclosure."  *Wolf*, 473 F.3d at 378.  The Department, accordingly, has properly invoked Exemption 3 to withhold the records identified in its *Vaughn* index to the extent those records were submitted to the federal court as part of the Department's wiretap application.

Once again, however, the Court must limit its decision granting summary judgment to the records listed in the Department's *Vaughn* index, which has arguably failed to identify all responsive records. In particular, House attaches to his opposition to the Department's motion for summary judgment a memorandum dated July 7, 2009 that seems to fall within the scope of his FOIA/Privacy Act request but that, as far as the Court can discern, is not listed in the *Vaughn* index. *See* Dkt. 10-5 at 84. It is unclear why this record does not appear in the *Vaughn* index, and, because the Department appears to have conceded that this document has now been made public, *see* Dkt. 20 (unsealing certain exhibits to House's opposition based on government's representation that they were no longer sealed in the underlying criminal prosecution); Dkt. 7-8, it is unclear whether the Department maintains that the record is exempt and, if so, on what ground. Because the Court will deny the Department's motion with respect to records not identified in the *Vaughn* index, the government will have the opportunity to address this record (and any other similarly situated records) in its renewed motion for summary judgment.

(c) Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This provision shields "those documents . . . normally privileged in the civil discovery context." *Sears*, 421 U.S. at 149. As relevant here, it permits an agency to withhold documents under the attorney work-product privilege, which protects documents and other memoranda prepared by an attorney in anticipation of litigation. *See FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015); *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947). "If a document is fully protected as work[-]product, then segregability is not

required" under FOIA. *Judicial Watch*, 432 F.3d at 371. The Department asserts that the

following records are exempt from disclosure under the work-product privilege:

> (1) Prosecutors' requests for permission to apply for court-authorization to intercept wire communications, including applications, affidavits of law enforcement agents, and proposed court orders;

> (2) OEO Title III System Logging Notes indicating that OEO has received a request from a prosecutor for permission to apply for a Title III order with respect to specified telephone numbers;

> (3) Email messages from [OEO's Electronic Surveillance Unit ("ESU")] to a prosecutor acknowledging receipt of the prosecutor's Title III application;

> (4) Email messages between the prosecutor making the request and the ESU attorney assigned to review it, in which the attorneys discuss the ESU review process, edits, revisions, etc.

> (5) Action memorandums from OEO to the AAG recommending approval of prosecutors' requests;

> (6) Memorandums from the AAG to OEO advising that the prosecutor's request has been approved and an attached copy of the AG's delegation of authority to the AAG; and

> (7) Letters signed by Deputy AAGs on behalf of the AAG to a U.S. Attorney advising that the AAG has approved the prosecutor's request to apply for a Title III order.

Dkt. 7 at 24–25; Dkt. 7-1 at 11–12 (Sprung Decl. I ¶ 31).[8]

According to the Department, these documents are exempt from disclosure under the

attorney work-product privilege because they were prepared in anticipation of the criminal

---

[8] The Court construes item one to include only *drafts* of applications, affidavits of law enforcement agents, and proposed court orders. *See* Dkt. 7-8. To the extent any such materials were in fact submitted to a federal court as part of the Department's application for a wiretap, they would fall within Exemption 3 for the reasons described above, and there would be no need to consider whether they may also be withheld under Exemption 5. Similarly, it is unclear from the Department's briefing and the record whether the letters advising of the AAG's approval (item seven above) were submitted to the court as part of the Department's application for a Title III wiretap, but if they were, they would be subject to Exemption 3, and not Exemption 5.

prosecution of House and his co-defendants. *See* Dkt. 7 at 25. Under the governing law in this circuit, "[w]hen considering whether a document is prepared 'in anticipation of litigation,'" the Court must "employ[ ] a 'because of' test, inquiring 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Boehringer Ingelheim*, 779 F.3d at 149 (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)). Sprung attests that the withheld records were prepared "in anticipation of litigation" because "[e]ach of the documents listed [] above was prepared by an attorney who was acting at the behest of a client (the U.S. Government) or someone acting at the direction of such an attorney." Dkt. 7-1 at 12 (Sprung Decl. I ¶ 33). This Court has previously held that documents of precisely this type constitute attorney work-product under Exemption 5. *See Ewell*, 2016 WL 316777, at *7–8.

House offers no persuasive argument as to why the Department erred in asserting Exemption 5. He argues that the Department has failed to comply with its duty to segregate all responsive, non-exempt material, *see* Dkt. 10 at 30, but the Department has no duty to segregate factual material under the work-product privilege. *See Judicial Watch*, 432 F.3d at 371. He also argues that the responsive records "are not predecisional," Dkt. 10 at 30, "but the question whether a document is 'predecisional' is relevant only to the assertion of the deliberative-process privilege, not the work[-]product privilege," and the Court has no need to consider the deliberative-process privilege in light of its holding that the specified documents are exempt under the work-product privilege. *Ewell*, 2016 WL 316777, at *8. Similarly, although House makes various allegations of government misconduct, *see* Dkt. 10 at 33–46; *see also supra* p. 14 (summarizing allegations), the "government-misconduct exception . . . has only been applied to the deliberative-process privilege." *Thompson v. United States Dep't of Justice*, No. 14-1786,

2015 WL 7303519, at *9 (D.D.C. Nov. 19, 2015). Moreover, "[e]ven assuming the exception [does] apply to the work-product privilege, it is construed very narrowly," and House has not adduced any credible, non-speculative evidence of the kind of "extreme government wrongdoing" required to trigger the exception. *Id.* To the contrary, the district judge presiding over House's criminal case has considered further evidence offered by House with respect to at least some of the allegations he raises here and concluded that they are without merit. *See House*, 2015 WL 4111457, at *14.

Finally, House contends that some of the withheld materials are simply administrative or "automatic" in nature, and thus do not constitute attorney work-product. *See* Dkt. 10 at 30–31. This Court, however, has consistently held that these types of materials are covered by Exemption 5 when they are created in anticipation of a specific criminal prosecution and would not have been created in its absence. *See, e.g.*, *Ewell*, 2016 WL 316777, at *7-8 (holding "e-mail messages . . . acknowledging receipt of the AUSA's Title III application" and "OEO Title III Logging Notes" properly withheld); *Campbell v. U.S. Dep't of Justice*, 133 F. Supp. 3d 58, 68 (D.D.C. 2015) ("[E]ven those documents that appear more administrative in nature—for example, email messages confirming receipt or logging notes—also fall within Exemption 5."); *Ellis*, 110 F. Supp. 3d at 110 (holding same); *Gordon*, 118 F. Supp. 3d at 288 (holding same).

The Court, accordingly, concludes that the Department lawfully withheld the records identified in its *Vaughn* index, and it is entitled to partial summary judgment as to those records. With respect to records, if any, not included in the *Vaughn* index, however, further proceedings are necessary.

**B.      Privacy Act**

House also argues that the Department failed to conduct the type of search required by the Privacy Act.  *See* Dkt. 10 at 10–11.  The forgoing discussion of House's FOIA claim does not, standing alone, resolve his claim under the Privacy Act because "[e]ven if documents are exempt from disclosure under FOIA, an agency may still be required to produce them pursuant to the Privacy Act."  *Campbell*, 133 F. Supp. 3d at 68 (citing *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987)).  Here, the Department has invoked Privacy Act Exemption (j)(2), which permits an agency to promulgate rules exempting a system of records from the Privacy Act's disclosure requirements if the system is maintained by a law-enforcement agency and contains "information compiled for the purpose of a criminal investigation."  5 U.S.C. § 552a(j)(2)(B); Dkt. 7 at 13.  And, in fact, the Department has promulgated a regulation specifically exempting its Title III request tracking system.  *See* 28 C.F.R. § 16.91(m) (exempting "Requests to the Attorney General For Approval of Applications to Federal Judges For Electronic Interceptions System of Records (JUSTICE/CRM–019)").  House, as a result, was not entitled to any records contained in the Title III request tracking system under the Privacy Act.  *See, e.g.*, *Campbell*, 133 F. Supp. 3d at 69; *Gordon*, 118 F. Supp. 3d at 290–91.

In asserting Exemption (j)(2), however, the Department does not distinguish between the Title III database and the Criminal Division email archive, *see* Dkt. 7 at 17; Dkt. 7-1 at 7–8 (Sprung Decl. I ¶¶ 24–25), and there is no indication that it has promulgated a regulation exempting the email archive.  *See* Dkt. 7 at 17 (citing only 28 C.F.R. § 16.91); Dkt. 7-1 at 7 (Sprung Decl. I ¶ 24) (stating only that the "Title III request tracking database . . . has been exempted . . . as permitted by [e]xemption (j)(2)).  The Court, nonetheless, concludes that the email archive falls beyond the ambit of the Privacy Act.  As at least two other judges of this

24

Court have explained, the Privacy Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual," 5 U.S.C. § 552a(a)(5), and the Criminal Division's email archive is "not indexed by personal identifier," *Gordon*, 118 F. Supp. 3d at 290–91; *Campbell*, 133 F. Supp. 3d at 69. *See also* Dkt. 7-1 at 6 (Sprung Decl. I ¶¶ 19–20) (describing email archive); *Mobley*, 806 F.3d at 587 (holding database of "e-mail traffic to and from other intelligence agencies" was not a "system of records" because the agency "'does not organize records in [the . . . database] by individuals who may be mentioned in those records, nor does [it] retrieve records about individuals from that database by use of an individual's name or personal identified as a matter of practice.'"); *Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 42–43 (D.D.C. 2008) (explaining that fact that emails *could* be searched by name or other identifier was insufficient to render them a "system of records" within the meaning of the Privacy Act). The Court, accordingly, concludes that the Department was not required by the Privacy Act to search for or to produce records from the Criminal Division's email archive.

## CONCLUSION

For the foregoing reasons, the Department's motion for summary judgment, Dkt. 7, is **GRANTED** in part and **DENIED** in part. The Department has demonstrated that it lawfully withheld those records identified in the *Vaughn* index, and it is entitled to summary judgment with respect to those records. The parties' filings, however, raise a question about whether other responsive records which were not included in the index exist, and, to the extent that they do, the Department has yet to identify the specific FOIA exemption, if any, that it has relied upon in

withholding those records.  The Department may filed a renewed motion for summary judgment addressing these outstanding issues on or before August 12, 2016.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  July 14, 2016