UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIN D. HOUSE,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>　　　　*Defendant*. | Civil Action No. 14-20 (RDM) |

**MEMORANDUM OPINION**

Plaintiff Erin D. House, who is proceeding *pro se*, was charged in the Western District of Pennsylvania with conspiracy to commit several narcotics offenses. In 2013, he filed a request with the Criminal Division of the United States Department of Justice under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, seeking documents regarding the electronic surveillance used to obtain evidence for his criminal prosecution. The Department declined to produce any records, and House filed this action under FOIA and the Privacy Act in 2014. *See* Dkt. 1. In response to House's suit, the Department searched two of its databases, affirmed its position that House was not entitled to any responsive records, and moved for summary judgment. *See* Dkt. 7.

On July 24, 2016, the Court granted the Department's motion in part and denied it in part without prejudice. *House v. Dep't of Justice*, 197 F. Supp. 3d 192 (D.D.C. 2016) ("*House I*"). The Court concluded that, although the Department had "demonstrated that it lawfully withheld th[e] records [it] identified in [its] *Vaughn* index," the "parties' filings . . . raise[d] a question about whether other responsive records[,] which were not included in the index," might exist. *Id.* at 210. The Court, accordingly, denied the motion in part but invited the Department to "file[] a

renewed motion for summary judgment addressing th[e] outstanding issues." *Id.* The Department has now done so. *See* Dkt. 27. For the reasons explained below, the Court concludes that the Department's renewed motion adequately addresses the issues identified in the Court's prior decision and will, accordingly, grant summary judgment in favor of the Department.

## I. BACKGROUND

The Court has previously set forth the factual and procedural history of the case, *see House I*, 197 F. Supp. 3d at 197–98, and, accordingly, need only address recent developments.

In its prior decision, the Court identified two issues that prevented it from entering summary judgment in favor of the Department. First, the Court noted the apparent incongruity between (1) the Department's assertion that the "entire time period of communications between the [attorneys from the Criminal Division's Office of Enforcement Operations ("OEO")] and the prosecutors concerning the Title III authorizations . . . at issue to this case" occurred "during the period [from] April 1, 2009[,] to September 2, 2009," Dkt. 7-1 at 6–7 (First Sprung Decl. ¶ 21), and (2) the failure of the "Department's *Vaughn* index . . . [to] identify any documents predating June 29, 2009," *House I*, 197 F. Supp. 3d at 201. The Court further noted that, as "early as May 26, 2009," a "magistrate judge authorized the installation and use of a 'pen/trap' on the phone identified in House's FOIA . . . request," but the *Vaughn* index contained no description of any documents regarding that authorization. *Id.* As a result, the Court concluded that it could not "foreclose the possibility that the Department possesse[d] potentially responsive records that predate[d] June 29, 2009." *Id.*

Second, the Court explained that House attached a document to his opposition to the Department's summary judgment motion that "seem[ed] to fall within the scope of his FOIA . . . request," yet, "as far as the Court c[ould] discern, . . . [was] not listed in the *Vaughn* index." *Id.* at 207.  The Court noted that it was "unclear whether the Department maintain[ed] that the record"—a July 7, 2009, memorandum—was "exempt and, if so, on what ground." *Id.*

The Department has now filed a renewed motion for summary judgment addressing the two open issues.  Dkt. 27.  House, in turn, opposes the Department's motion, and he raises a new contention regarding the adequacy of the Department's search.  Dkt. 33.

## II.  ANALYSIS

### A.   Absence of Records Prior to June 29, 2009

The Court previously declined to grant summary judgment in favor of the Department because, among other things, the *Vaughn* index contained no entries for records dated prior to June 29, 2009, even though the Department had acknowledged that communications between lawyers from OEO and the prosecutors who handled House's case began as early as April 1, 2009.  *House I*, 197 F. Supp. 3d at 200–01 (Citing Dkt. 7-1 at 6–7 (Sprung Decl. I ¶ 21)).  Similarly, although a "magistrate judge authorized the installation and use of a 'pen/trap' on the phone identified in House's FOIA . . . request," the *Vaughn* index contained no entries relating to that surveillance, which also predated June 29, 2009.  *Id.* at 201.  The Department has now explained both apparent discrepancies to the Court's satisfaction.

As to the first issue, the Department explains that the Title III "request concerning telephone number 323-208-[xxxx] . . . grew out of earlier Title III requests concerning several other telephone numbers and involving a large conspiracy of which [House] was a part." Dkt. 27-1 at 3 (Fourth Sprung Decl. ¶ 9).  The first request for one of those associated numbers was

submitted by the U.S. Attorney's Office for the Western District of Pennsylvania to OEO on April 10, 2009, but the "initial Title III request concerning telephone number 323-208-[xxxx]" was not submitted until June 29, 2009—the date of the first entry in the Department's *Vaughn* index. *Id.* (Fourth Sprung Decl. ¶¶ 8–9). Because House's FOIA request sought records concerning electronic surveillance of only the 323-208-xxxx telephone number, *House I*, 197 F. Supp. 3d at 197 (identifying cellular telephone number and associated UFMI and IMSI numbers), the Court agrees that the records pertaining to the pre-June 29 requests to intercept communication to and from the *other* telephone numbers "do not fall within" the scope of House's FOIA request, Dkt. 27 at 7. And because the Title III request relating to the 323-208-xxxx telephone number was not submitted until June 29, 2009, it is not surprising that the Department's *Vaughn* index contains only entries dated June 29, 2009, or later.[1]

Similarly, the Department has provided a convincing explanation for why the *Vaughn* index does not include any entries relating to the May 26, 2009, authorization for use of a pen register or trap and trace device on the 323-208-xxxx telephone number. Under Title III, an application for "an order authorizing or approving the interception of wire or oral communications" must first be approved by a senior Justice Department official, such as the "Attorney General, Deputy Attorney General, Associate Attorney General," or any Assistant Attorney General or Deputy Assistant Attorney General "specifically designated by the Attorney General." 18 U.S.C. § 2516(1). In contrast, the Pen Register Statute merely requires that "an

---

[1] Significantly, the Department did search its Title III tracking system for the related telephone numbers, but, as the Department's declarant explains, those searches "did not identify any responsive documents that were not already on the *Vaughn* index." Dkt. 27-1 at 3–4 (Fourth Sprung Decl. ¶ 9). The Department's search of the email accounts of the attorneys that handled the Title III requests for House's telephone number and the associated numbers also failed to reveal any "records predating June 29, 2009[,] that were responsive to [House's] FOIA request." *Id.* at 4 (Fourth Sprung Decl. ¶ 11).

attorney for the Government . . . make application for an order . . . in writing [and] under oath." 18 U.S.C. § 3122(a).  "[F]ederal prosecutors," accordingly, "make [pen/trap] applications based" upon only "the approval of an appropriate supervisor," Dkt. 27-1 at 5 (Fourth Sprung Decl. ¶ 13), and, unlike Title III records, the records produced from pen/trap applications are not centrally stored in the Criminal Division's "official information management system for Title III applications," Dkt. 7-1 at 4 (First Sprung Decl. ¶ 14).  It makes sense, then, that House's FOIA request, which was directed at the Criminal Division of the Department of Justice, and not at the U.S. Attorney's Office for the Western District of Pennsylvania, *see* Dkt. 7-2 at 2; *House I*, 197 F. Supp. 3d at 197, failed to locate records relating to the pen/trap application, *see House I*, 197 F. Supp. 3d at 202 (explaining that "the Department's FOIA regulations mandate that requests be sent 'directly to the FOIA office of the component that maintains the records being sought'" (quoting 28 C.F.R. § 16.3(a)(1)).

The Court, accordingly, concludes that the Department has adequately explained why the *Vaughn* index does not include any entries predating June 29, 2009, or referring to the pen/trap application.

**B.      July 7, 2009 Memorandum**

In support of his opposition to the Department's initial motion for summary judgment, House included a "memorandum" dated July 7, 2009, which authorized Department of Justice lawyers to apply for a court order to intercept communications to and from the 323-208-xxxx telephone number.  Dkt. 10-5 at 84–85.  The Court previously noted that this memorandum appeared "to fall within the scope" of House's FOIA request but that, "as far as the Court c[ould] discern, [it] [wa]s not listed in the *Vaughn* index." *House I*, 197 F. Supp. 3d at 207.  Because the apparent omission of any reference to this record raised a question about whether the Department

had conducted a thorough search, the Court directed that the Department address the issue in its renewed motion for summary judgment. *Id.* The Department has now done so, *see* Dkt. 27 at 13–14, and, once again, has satisfied the Court's concern.

As the Department now explains, the "memorandum was attached, along with other related documents, to a July 7, 2009[,] email message . . . advising that [the Department] had approved the prosecutor's Title III request;" it was "assigned bates n[umbers] 562–563;" and it is specifically identified in the Department's *Vaughn* index. Dkt. 27-1 at 6 (Fourth Sprung Decl. ¶ 14) (citing Dkt. 7-8 at 33). House, however, remains unconvinced. Dkt. 33 at 2–3. He notes that the July 7, 2009, memorandum authorized Justice Department lawyers to seek court-ordered interception of *two* telephone numbers, Dkt. 10-5 at 84–85, while the Department's *Vaughn* index refers a "Title III order for *a* telephone number," Dkt. 7-8 at 33 (emphasis added). The Department responds that it is "clear from numerous entries in the *Vaughn* index that the prosecutor was seeking permission to apply for a Title III order concerning *both*" telephone numbers, and it asserts that the "third sentence of [the *Vaughn* index] entry" referencing "only one telephone number" was an "error" that "does not undermine the adequacy of the [Department's] search for responsive records." Dkt. 36-1 at 4 (Fifth Sprung Decl. ¶ 13 & n.2). The Court agrees. House is correct that the *Vaughn* index indicates that the July 9, 2009, memorandum references only a single telephone number, but it is evident that the reference is simply a ministerial error. The Court sees no reason—and House does not provide one—why this minor error should call into question the adequacy of the Department's search and response to House's FOIA request.

The Court, accordingly, concludes that the July 9, 2009, memorandum was, in fact, adequately referenced and described in the *Vaughn* index.

## C.     Adequacy of the Department's Title III Database Search

Finally, House challenges the Department's assertion "that there were 'no' references in the Title III tracking system to the name 'Erin House.'" Dkt. 33 at 1–2 (quoting Dkt. 27-1 at 4 (Fourth Sprung Decl. ¶ 10)). House asserts that the Department's assertion is demonstrably false, as shown by the multiple documents he appends to his opposition that include references to "Erin House." *See, e.g.*, Dkt. 33 at 7, 10, 21; *see also* Dkt. 10-2 at 5–74 (FBI agent's affidavit in support of a Title III application repeatedly referencing "Erin House"). House, however, simply misunderstands how the Title III tracking system operates. As the Department explains, when OEO "receives a request for permission to apply for a Title III order, a staff member enters the name of the lead subject"—and only the name of the lead subject, "irrespective of whether there are other intended interceptees"—into the tracking "system's 'subject field.'" Dkt. 36-1 at 3 (Fifth Sprung Decl. ¶ 9). Here, the Department explains, the prosecutors who "submitted the requests" in connection with "the narcotics trafficking investigation of which [House] was a part" never "identif[ied] [him] as the lead subject of the intended surveillance," and, accordingly, House's name was not entered into the tracking system. *Id.* (Fifth Sprung Decl. ¶ 10); *see also* Dkt. 27-1 at 4 (Fourth Sprung Decl. ¶ 10). The fact that references to House appear in documents maintained by OEO, but not in the subject field of the tracking system, does not discredit the Department's search, nor has House identified any reason to conclude that the Department has failed to locate all potentially responsive records.

## CONCLUSION

The Court, accordingly, will **GRANT** the Department's renewed motion for summary judgment, Dkt. 27.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 5, 2017